USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/28/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ELVIS MARTINEZ *et ano.*,

               Plaintiffs,

   -v-

AVALANCHE CONSTRUCTION GROUP
INC. *et al.*,

              Defendants.
-----------------------------------------------------------X

**OPINION AND ORDER**

20-CV-11065 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

The parties in this wage-and-hour case have submitted a joint "fairness letter-motion" dated October 13, 2021 (Dkt. No. 38) and two fully executed settlement agreements (Dkt. No. 38, Exhibits A (Avalanche Defendants) & B (Lhotse Defendants) for my approval under *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015).[1] The parties have consented to my jurisdiction under 28 U.S.C. § 636(c) (Dkt. No. 36). Courts generally recognize a "strong presumption in favor of finding a settlement fair" in cases like this one brought under the Fair Labor Standards Act ("FLSA"), as they are "not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (citation omitted).

Having carefully reviewed the joint fairness letter-motion submitted by the parties as well as the proposed settlement agreements, the Court finds that all of

---

[1] An amended motion, adding a missing page of Exhibit A, was filed on October 17, 2021. (Dkt. No. 40).

1

the terms of the proposed settlement agreements (including the allocation of attorneys' fees and costs) appear to be fair and reasonable under the totality of the circumstances (and in light of the factors enumerated in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)), except for one.[2]

The parties' settlement agreements (at paragraph 5 in each agreement) include an "Agreement Not to Publicize" provision. The Court finds that this provision imposes reasonable restrictions on affirmative contact with print media, but unreasonable restrictions on the use of social media. This provision in each agreement states specifically: "Plaintiffs agree that they will not publicly publicize the terms [or existence] of this Agreement in the print media or on social media."[3]

As the court in *Zorn-Hill v. A2B Taxi LLC*, No. 18-CV-11165 (KMK), 2020 WL 5578357, at *6–7 (S.D.N.Y. Sept. 17, 2020), summarized in thoroughly canvassing the case law on this issue:

> "The overwhelming majority of courts reject the proposition that FLSA settlement agreements can be confidential." *Armenta v. Dirty Bird Grp., LLC*, No. 13-CV-4603, 2014 WL 3344287, at *2 (S.D.N.Y. June 27, 2014); *see also Nights of Cabiria*, 96 F. Supp. 3d at 177 (same). This is because "a provision that prohibits Plaintiff's right to discuss the settlement is incompatible with the purposes of the FLSA, namely, to ensure that workers are aware of their rights." *Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2019 WL 117466, at *3 (S.D.N.Y. Jan. 7, 2019) (quotation marks omitted) (collecting cases).
>
> Courts are split on whether agreements that limit plaintiffs' ability to contact media are permissible. *Compare Chun Lan Guan v. Long*

---

[2] The Court's approval of the allocation of attorneys' fees should not be construed as an approval of the hourly rate of plaintiffs' counsel.

[3] The language in the Lhotse Defendants' settlement adds the words "or existence" after "the terms."

*Island Bus. Instute, Inc.*, No. 15-CV-2215, 2020 WL 1289517, at *3 (E.D.N.Y. Mar. 18, 2020) (approving media restriction because "[a]lthough these provisions do place some limits on Plaintiffs' ability to discuss the settlements, the limits are not absolute and do not restrict Plaintiffs' general ability to discuss the settlements"); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-475, 2017 WL 2778029, at *4 (E.D.N.Y. June 26, 2017) ("[T]he confidentiality provision is not highly restrictive because it pertains only to the [a]greement...."); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (same, and also noting that "since no one can force Plaintiffs to opine on the case in the future anyway, it is by no means irrational or improper for Plaintiffs to compromise words for dollars as part of a global, arms-length settlement"); *with Garcia v. Good for Life by 81, Inc.*, No. 17-CV-07228, 2018 WL 3559171, at *4–*5 (S.D.N.Y. July 12, 2018) ("Barring plaintiffs from contacting the media is thus not a trivial infringement on their ability to spread the word to other workers who may then be able to vindicate their statutory rights." (citation and quotation marks omitted)). Courts are also split on whether FLSA settlements may limit plaintiffs' ability to post to social media. *Compare Burczyk v. Kemper Corp. Servs., Inc.*, No. 15-CV-1483, 2017 WL 11511165, at *1 (E.D.N.Y. Mar. 28, 2017) (rejecting proposed social media restriction because "considering the commonality of which individuals communicate over the internet, preventing Plaintiffs from posting 'on any social media, website, blog or other form or Internet activity' places a substantial burden on their ability to openly discuss their experience"); *Chung v. Brooke's Homecare LLC*, No. 17-CV-2534, 2018 WL 2186413, at *2 (S.D.N.Y. May 11, 2018) (finding "too broad" a provision that applied restrictions to social media); *with Flores v. Studio Castellano Architect, P.C.*, No. 15-CV-9158, 2017 WL 4417697, at *3 (S.D.N.Y. Oct. 2, 2017) (approving a non-disclosure provision "limited to an agreement not to publicize the terms of the settlement in news or social media"); *Lola*, 2016 WL 922223, at *2 (finding restriction on social media "is not absolute" and does not limit "[plaintiffs'] general ability to discuss the [s]ettlement").

Here, as in *Zorn-Hill,* the restriction on affirmative steps to communicate with the "print media" is permissible. First, it does not prevent Plaintiffs from discussing their settlement with their colleagues and friends who may face similar uncompensated overtime. Second, it limits Plaintiffs' ability to contact the print

3

media only about the settlement itself.  Plaintiffs may still take affirmative steps to contact the media about matters outside the settlement, such as the allegations in their complaint.  Third, the Court does not read this provision to prevent Plaintiffs from responding to media inquiries with truthful statements about their experience litigating their case (including acknowledging the existence of the settlement).  This restriction is therefore significantly less onerous than "no-media" restrictions approved by other courts, which in at least two cases required a scripted response to media inquiries.  *Zorn-Hill*, 2020 WL 5578357, at *7 (citing *Daniels v. Haddad*, No. 17-CV-8067, 2018 WL 6713804, at *2 (S.D.N.Y. Dec. 17, 2018) (requiring the plaintiffs, if contacted by the media, to "simply refer the inquirer to the public dockets" (record citation and quotation marks omitted); *Lola*, 2016 WL 922223, at *2 (requiring the plaintiffs to say "no comment" or "[t]he matter has been resolved" (record citation and quotation marks omitted)).

However, for the same reasons as the court in *Zorn-Hill*, I find that the restriction on the use of social media is impermissible.  As the *Zorn-Hill* court observed: "Since individuals regularly use the internet to communicate with friends, colleagues, and family, restricting Plaintiffs' ability to use it 'places a substantial burden on their ability to openly discuss their experience litigating the lawsuit and entering into the [Proposed Settlement].'"  2020 WL 5578357, at *7 (quoting *Burczyk*, 2017 WL 11511165, at *1).  This is incompatible with the statutory purpose to "ensure that workers are aware of their rights."  *Id.* (quoting *Arango*, 2019 WL 117466, at *3).  It is true that the settlement agreements restrict only

4

efforts "to publicize" the agreement.  But it is not clear what that really means. Indeed, this wording provides little comfort "[g]iven the broad range of meanings which can be imputed to the word 'publicize[.]'" *Alfajr Printing & Pub. Co. v. Zuckerman*, 646 N.Y.S.2d 858, 861 (2d Dep't 1996).[4]

Notably, the settlement agreements include a severability provision (at paragraph 7).[5]  Accordingly, the Court hereby finds the "agreement not to publicize" provision at paragraph 5 to be invalid to the extent it restricts Plaintiffs' use of social media and therefore that part of the provision is struck and deemed to be unenforceable.  *See, e.g., Cardenas v. A.J. Piedimonte Agric. Dev., LLC*, No. 1:18-CV-881 (EAW), 2020 WL 3469681, at *4 (W.D.N.Y. June 25, 2020) (relying on severability clause and conditioning approval on striking or modifying non-disparagement clause); *Lara v. Air Sea Land Shipping & Moving Inc.*, No. 19-CV-8486 (PGG) (BCM), 2019 WL 6117588, at *3 (S.D.N.Y. Nov. 18, 2019) (same).

Accordingly, the proposed settlement agreements (except for the social media restriction in paragraph 5) are approved.

---

[4] As the *Zorn-Hill* court noted, "[c]ourts in the Second Circuit have found that restrictions binding both plaintiffs and defendants are more likely to be reasonable." *Zorn-Hill*, 2020 WL 5578357, at *7, n.6 (citations omitted). Here, the proposed restriction applies only to Plaintiffs, thus supporting the rationale for rejecting the proposed social media restriction.

[5] Paragraph 7 provides: "<u>Enforceability</u>: If any provision of this Agreement is held by a court of competent jurisdiction to be illegal or unenforceable, such provision shall be severed from this Agreement and have no force and effect.  However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair, the enforceability of any other provision of this Agreement."

Plaintiffs have advised the Court that, while defendant A&P Quality Construction, Inc. has not appeared in this action, they are consenting to its dismissal at this time. Dkt. No. 38 at 1, n.1. Accordingly, A&P Quality Construction, Inc. is hereby dismissed from this action.

The Court will sign the stipulation of voluntary dismissal submitted by the parties. Dkt. No. 42.

The Clerk is respectfully directed to mark Docket Nos. 38 and 40 as "granted (except as to paragraph 5 with respect to social media)" and to close this case.

**SO ORDERED.**

Dated: October 28, 2021
     New York, New York

_____
JAMES L. COTT
United States Magistrate Judge